This is United States, I'm sorry, United States of America v. City of New York. Thank you, Your Honor. May it please the Court, Jameson Davies to the Appellant. This Court should reverse the District's post-judgment order finding the City violated the modified remedial order by changing the pace at which it calls candidates to take the physical aptitude test for two independent reasons. First, the order does not unambiguously require the City to obtain the monitor's approval before making a change in the pace of calling candidates. To find a violation under this Court's decision in King, the four corners of the order must leave no uncertainty that the conduct violates the order and any ambiguity is construed in the favor of the party alleged to have violated the order. Here, the order does not provide with no uncertainty that the pace of calling candidates to take the CPAT is a step within its meaning. Second, the District Court erred in finding the City had not made a diligent attempt to comply with the remedial order. Could you say that last part again? Sure. Second, the Court erred in finding that the City had not made a reasonable attempt, diligent attempt to comply with the order. The District Court found the City has been generally compliant with the MRO, any breach was made in good faith, and the City provided evidence that showed the pace of calling candidates to take the CPAT well in advance. In those circumstances... Now, we're reviewing this conduct for abuse of discretion. Is that right? It's abuse of discretion, but it's more heightened than the usual abuse of discretion. I understand that, but it's abuse of discretion plus. It's not de novo review. Correct, yes. Okay, let's hear you then on the two errors. Sure. So starting in Step 1, the modified remedial order requires the City to obtain the monitor's approval for taking any step in any process for the selection of infill firefighters, and then it goes on to assign the process for the selection as a list of steps. There are 16 listed steps in there, one of which is starting to call candidates to take the CPAT, initiating the CPAT, but nowhere in that definition is the pace of calling candidates to take the CPAT. Right, but it does say without limitation in that paragraph, right? It does say without limitation. I think the, you know, so it's not necessarily confined to just those 16 examples, but I think the fact that it is so detailed in providing 16 separate examples... And you're asking even more. So you're saying, I mean, it's almost like you're suggesting that there's a negative inference because it wasn't listed, that it's not one of them. I don't think it's because it's not listed. I think it's because it lists the CPAT as a step, but this is really a subpart of that process. So there's no dispute that the CPAT itself is a step, but there's nothing just reading the MRO, those two provisions of the MRO, there's nothing that would tell you with no uncertainty, no ambiguity that deciding how many candidates to call at a single time is a step in the process. I think it's really highlighted by the fact that the Monitor and all the parties knew how many candidates were being called for a year and a half before anyone even raised any allegation that this was a violation of the MRO. I saw that repeatedly asserted in your papers, but then I couldn't find the support for it. Can you help me out? Sure. So starting in a September 2018 status conference, that's a docket 2095 that was docketed after the briefs were filed. We say for candidates with a final adjusted score of 124 through 102, that includes 2,421 candidates. I understood that you told them what bands or whatever you were going to, but I didn't see where you told them, and that would mean X number. It does say exactly that. Okay, so that's in docket number 2995? 2095 at page five, and then the October 2018 Monitor's report says, as reported by the city in the status conference, the initial group comprises over 2,400 candidates. That's docket 1877. All right, so I haven't had a chance to look at that, but assuming I do and I find that you did give them notice of how many, you're required by the order to get consent for anything you want to do that falls within the order, right? So just alerting them is not good enough. Well, the city is required to get consent for any step in the process. You're right. So if this is a step, the fact that you told them the number is not by itself enough, am I right? If you interpret the order to mean that this number, giving the number is a step, then I think that would not be enough, and that's why we're not challenging the court's finding on step 2 of the King test, because if you read the order unambiguously, we weren't able to show that this was not, in fact, a change, and we're not contesting that factual finding on appeal. So we're relying on steps 1 and 3, the ambiguity of the order and the reasonable diligence and compliance. So is the issue whether there was a change? I think it's been framed by the DOJ and the Vulcans as the issue being whether there's a change, but the issue is a really broader one, is whether a change is within the definitions of, in paragraphs 16 and 11 of the MRO unambiguously. So there is, if you read the MRO, there's just nothing in there, and I don't think either party has really, either of the appellees have really come upon a plausible interpretation of the MRO that would include this pace of calling candidates to take the CPAT as a step. You know, they're really saying by analogy, by suggestion, by inference, it should be included. You know, it's a policy determination, but none of that is actually in the MRO itself. If you look to the four corners of the MRO as King requires, it's simply not unambiguously part of a step. Had two classes been used in the past? The data didn't bear out. The FDNY's position was that it had called in the past two classes at a time. The data is a little ambiguous because of the fact that you have to call everyone within score band at the same time. Ultimately, that was FDNY's understanding of its prior practice, but we weren't able to sort of prove that up, so that's why we're not contesting step two. Is there any finding that two classes were called in the past? There's no—that two classes were called in the past? No, there's no finding on that point. If they had been called in the past, it would be pretty hard to call this a change, wouldn't it? Correct, yes. In that case— So don't we need to know whether two classes were called in the past? I don't think that's—I don't think it's necessary for the analysis at step one because the question is, even assuming it's a change, whether the order unambiguously requires approval before making that change. So if you're saying assuming there was a change, if two classes were called in the past and there wasn't a change? I don't think it affects the analysis at step one because the prior practice— whether or not a change requires monitor approval is the question, so it doesn't actually—for this analysis— change requires, but if two classes had been used, there would have been no change, right? Right, and in that case, I don't think there would be any dispute that we didn't violate the order because there was—it would have been the same as it had been done in the past. So if there were a finding that two classes had been used in the past, you win? Correct. So wouldn't you like a remand to find out whether there had been two classes in the past? I mean, I think the parties developed that issue factually as much as they could. Well, they developed it, but there's no finding. I think it's unlikely that the district court would enter a different finding. I don't sort of think it's really necessary. When you say a different finding, is there any finding? I don't think there's a specific finding that there had been— well, I guess I think the district court did say that there had been a change based on what the monitor showed in its report. So I don't know if it rises to the level of a specific factual finding, but I think that does underlie the court's analysis. Is it your position that there had been two classes called in the past? That was the FDNY's understanding based on its information. I don't know why that's even up in the air. I mean, when you call a class, there must be all kinds of paperwork on that issue. There was evidence about how many candidates were called. It was just a question of whether or not the number was driven by essentially having to call the score bands all at the same time or by calling enough candidates to fill two classes at once. And there had been a turnover in the FDNY's division that dealt with that issue, so there was kind of a lack of historical knowledge of exactly what the practice was. Okay, so my understanding of your argument is that you are not disputing the allegation that this was a change, and instead what you're saying is that this is not a change of a kind that qualifies as a step. Correct. And presumably you're doing that because you looked and cannot prove that they have ever called two classes. Correct. We didn't have the capacity to dispute the district court's decision on step two. Well, there were two parts to the question. Are you saying you don't dispute that there were never two classes in the past? We are saying that we don't have sufficient evidence to challenge the district court's decision on that point. But I thought you just told me that the district court didn't make a decision on that point. Well, it did find that we had, assuming there was a change, that it violated the order at step two, so I think that's... But you come back to saying assuming there was a change. I'm trying to go back to whether anyone is entitled to assume that. I think the court's order is clear enough that it read the order as requiring approval for a change, and it said that there was. Yes, it requires approval for a change. So then the question is, was there a change? I think the district court decided that there was a change. Without making a finding whether there had been two classes in the past. I will take a closer look at the MRO to see, or the district court's order, to see exactly what the wording is. Well, would you agree there is no change if there were two classes in the past? Yes, we would agree with that. You would agree with me. I would hope so. May I ask you a practical question here? Sure. How much has been made of the fact that the concern animating all of this is that folks would drop out of the process? Am I correct in understanding that that's one of the concerns? Yes, that is one of the concerns, yes. Okay. I need you to explain to me, because I'm going to ask your adversaries to explain to me, how the number of people called affects that. Because it seemed to me very simplistically that the exam is given on one date. The amount of time until people enter, whether it's the first class or the second class, is fixed. How does it matter when people are called on their way to class one or two? I might have thought, again, perhaps simplistically, that knowing whether you were going to be called might encourage that group to stay in the process. What am I missing about the concern here? Yes. So I would say our argument, actually, and the data, I think, of the newest round that happened after this has sort of borne this out, is that people who were called earlier tend to stay because they realize that the FDNY is interested in them and they will continue to go through the process. I think the argument on the other side is that there historically has been attrition in between the test date and the CPAT date, and if it's shorter, there's less time to get in contact with folks, to have them train and get more practice sessions in to prepare to take the test. All right. Well, I'll ask your adversary to flesh that out more if they wish to, but thank you. Thank you. Is that, just to follow what you said, is that another way of saying that if there are two classes, there's a higher attrition rate? The argument that was made was that there's a risk of a higher attrition rate if there's two classes called at once. The city did not think that was the case, and I think the data from the last round has borne out that there was actually not as high of an attrition rate, the round that happened after this briefing was over. Basically, both sides made a judgment about what a bunch of countervailing effects might yield, and the city thought calling two classes, including additional efforts it had made to prevent attrition, would not have caused a higher attrition rate. Thank you. Thank you, Anderson. So we are hearing from a split argument. First is Jessica Apter, is that correct? Yes. And you are taking five minutes. Yes, please. May it please the court. Good morning. I'm Jessica Apter of Levy-Ratner, representing the Plaintiff Intervenor Appellees, and I plan to address the threshold issue of jurisdiction, while Ms. Schwabauer, representing the United States, will primarily address the merits. The city appeals the district court's finding that it violated the MRO when it pushed enough candidates through a single round of CPAT testing in order to fill a second academy class without seeking or obtaining approval from the monitor to do so. The city's interest in not having that finding held against it when it eventually moves for dissolution of the monitorship can be remedied in a later appeal if and when that speculative harm becomes real and the district court denies the motion. Why don't we think about this like a consent decree? You certainly wouldn't argue that this can't be dealt with until decades after when it dissolves. Why can't we deal with it now? Well, when the city says that in its brief, it sets up a bit of a strawman argument because we're not arguing that they would have to wait until the case is disposed to appeal. They have to wait until they feel that they can successfully move to dissolve the monitorship and the district judge denies that motion. Well, that becomes a bit circular, right, because the reason they're fighting so hard for this right now is because they want to have a clean record so that they can eventually make the argument. So that doesn't really carry the day. I mean, my understanding of the way our laws work with respect to civil contempt orders is it looks to whether or not this is still a matter that's pending, and this case isn't. It was decided a long time ago by both the district court and an appeal. Why can't we hear it now? Well, the first coen factor to make a collateral order reviewable is conclusiveness, and we don't dispute that the- You're talking about the Cohen doctrine? Yes. That's pre-judgment, isn't it? It still applies post-judgment. The cases make clear that the practicality considerations in the post-judgment context- Have you ever seen a post-judgment finding that a decree was violated that wasn't appealable? Yes. You have? In this court's decision in Wilder v. Bernstein, another institutional reform case, the city of New York entered a consent decree requiring it to take certain measures to correct the foster care system and to extend those measures to all foster children. When the city failed to include foster children placed with relatives, the plaintiffs sought a contempt finding. The district judge interpreted the order as covering the kinship placements and directed the city to comply but did not award sanctions. And this court found that that order was merely interpretive and therefore- But you said directed them to comply. Here there's a determination that they have failed to comply. This isn't a direction to comply. This is a determination of failure, isn't it? There is a determination of failure that is only implicit in the Wilder v. Bernstein decision. Is a determination of failure to comply with an order ever been ruled not appealable? I don't think I can go that far. And why shouldn't it be appealable if they've been found to have violated? I guess they didn't use the word civil contempt, but it's a finding of violation, isn't it? Yes, it is a finding of a violation. If they ever do it again, one violation will be held against them, won't it? If they do it again and then are held in contempt and sanctions are awarded, at that point this would become reviewable. But in determining whether to award sanctions, won't there be a Monet district court say, well, after all, you did violate it once already? You're a recidivist? I don't think that, you know, if the city continues to be making that argument, if it ever happens, won't you? I think it depends when it happens. If it takes ten years for the city and ten years is a big number, but if it takes long enough for the city to make this motion that it anticipates making and it does show that it has been complying. If next week you think they fail to comply and you bring them into court, won't you say to the judge, judge, this is the second time they didn't comply with the order? Yes. You will say that? Yes. And they will say, judge, we never got a chance to appeal that first one because they said it wasn't appealable? But even at that point there still wouldn't be the kind of harm that would satisfy the third co-infactor to make this decision effectively unreviewable. But Cone postpones it to a final judgment. We're beyond that. The cases still say, this court said last year in Amaro v. Cigna, that a post-judgment order, a judging a party in contempt unaccompanied by sanctions, is not a final decision amenable to appeal. Let me ask this. What if the district court had rejected your request for a finding of violation? Would you then have had grounds to come to us or would you have been telling us that we needed to wait? If they had denied the order, that would be consistent with, hearing the appeal would be consistent with Latino Officers Association because that disposes of the question and the consequences of the violation. That's because each violation is a separate entity, right? I mean, it wouldn't dissolve the degree. It would say, if you did not get your order in this instance of a violation, you would not have waited. You would have appealed it because every, when we are no longer pending, when it is post-judgment, each matter becomes relevant. There are cases where the denial of a contempt motion has been heard and, you know, that category of cases has been held to have, you know, those decisions determine the rights of the parties. They, in a way, that is more final than just the mere finding of the violation. What is it you want them to wait for? For, you know, they have a speculative harm that eventually it will be used against them when they move to dissolve the monitorship. Do they have harm now? I mean, you're not saying that next time around they could call two classes again. Their conduct going forward is now going to be controlled by the conclusion, in this case, that they violated the order. The order doesn't tell them that they can't call two classes. The order tells them they have to get approval. I understand that. But their view up until now was that what they did didn't require any action on their part. They want to test that. They think that there's been an erroneous decision made. Why can't they be heard on that? Well, I think it's important to note that the city doesn't say that the court's interpretation was wrong. The city only says that the court's interpretation was not clear from the four corners of the MRO. And the city also concedes in its briefing that- Well, it's wrong to find them in violation. The court was wrong to find them in violation. Well, the court says that the city, even without a question of any violations, that the district judge had the authority under the MRO to issue the forward-looking directives that he did issue. So I don't think the city can show that its rights have changed when it concedes that this outcome can be contemplated under the MRO. Of course, it says it's not clear enough in the MRO, but it doesn't say that it's wrong, that the judge is wrong to interpret it this way on a forward-looking basis. They do concede. It's at page 24 of their brief. They say that the MRO likely authorized the judge to prospectively order compliance consistent with the interpretation that he used, despite, you know, regardless of the violation. And they also concede at page 2 that they have no quarrel with the forward-looking directives. So their rights have not been altered in a way that is of sufficient importance to invite this court to entertain the request for piecemeal review. Okay. And now we'll hear from your colleagues. Thank you. Schwabauer, am I pronouncing it right? Yes, Your Honor. Thank you. May it please the court, Barbara Schwabauer for the United States as Plaintiff Appellee. I plan to address this panel's questions about the first and third king factors, but before I do, I just want to take a step back for a minute to better explain this dispute for the court. The city failed to get monitor approval for a significant change in its hiring process that affected thousands of firefighter candidates. This failure is not a mere technical error. It strikes at the very heart of the MRO. Can you tell me what do we do about the fact that they're making a quasi-reliance argument that y'all failed to object pretty late in the game? What do we do about that? Well, I think the argument that the city has made is that the United States and plaintiff's interveners did not allege that this was a violation of the MRO immediately. But importantly, that is an argument of last resort, and certainly the fact that the parties were going back and forth for months about this particular issue is a sign that the parties thought this was covered by the MRO and that the city was not meeting its obligations under the MRO and was pursuing information in order to assure that the city would meet those obligations. Is there any violation if there is no change? If there's no change in the process, there's no violation. And I'll ask you the same thing. Is there a finding that their two classes were used? The district court below did, in its order in the special appendix, page 8, did make a finding that the parties had established from the data that there was a change in the hiring process between exam 2000 and exam 7000. Page 8 outlined that? On the special appendix. Oh, how about the right there? That special appendix is the opinion, Your Honor. I'm sorry. It's page 7 of the opinion itself. Of the special or the joint? Of the special. Sorry, the page number of the special appendix is 8, the page in the opinion is page 7, and it says, the court said that the data are clear and no engineering is necessary to draw the conclusion that there was a change in the hiring process between exam 2000 and exam 7001. Can you help me understand why it's a concern that they called two classes or called enough people for two classes? As I suggested to your adversary, I would have thought that getting notice that yes, you're in the pool of people who will be called might be a positive thing. What am I missing? Well, the important thing is that the impact on candidate attrition was a potential. When you're making a policy... Why? I'll explain, Your Honor, my apologies. For some of the reasons that opposing counsel has suggested, which is that there is a difference in the wait time between the written examination and the CPAT that affects the amount of time that people have to prepare for the physical examination, there's also a potential of the wait time between the CPAT and actually being hired into a class. And here, by calling the volume at this rate, we had in the first year of a four-year exam two-thirds of all possible candidates being called. And some of those people might have to wait up to four years in order to even reach a class. But they would have had to wait up to four years if they hadn't been called, and they'd been called in two tranches, right? It's true, Your Honor. And importantly, below, the United States did not take a position on whether or not this would have been a net positive on attrition or a negative effect on attrition. The point is that the parties, this was something that had the potential for an effect, positive or negative, and that the parties in the cooperative process under the MRO didn't get the chance to address it to determine whether or not the city had sufficient- Well, I ask these questions because whether or not one thought this was a step that had to be cleared might be informed by whether or not a reasonable person would think this could foster the discrimination that the whole order is meant to minimize if not eliminate. And I'm still confused because if you called only class one, those people would have had to train, be prepared, whatever. The others would have been left hanging. Instead, you called them all. How is that not a benefit to them rather than a harm? I'm open to being persuaded. Otherwise, I just don't see it. Well, I think the potential for harm here, which the district court identified and which the parties have discussed, is that it did delay the period of time for the average applicant to get into an academy class. And we're not saying that delay the period. So under Exam 2000, the applicant had an average of 16 months between taking the CPAC and being appointed to the academy. And under Exam 7001, that was a 27-month gap. And the importance of that gap is that people could fall out for other reasons. We could have very qualified candidates at the beginning of this. But how is that a product of calling enough for both classes? Because, okay, let's just say you call 1,000 and it's enough for two classes. Instead, you would have called 500. I mean, and eventually you're going to call those 500 to get the first class set. How are the other 500 harmed? Help me understand. Again, it's changing the rate at which those individuals will have to wait in order to reach an academy class. How does the rate change? Those other 500 would have still had to wait because you wouldn't have called them for another six months. They don't get into the second class any earlier or any later, whether they're called altogether at the start or whether they're called in two groups. Is that right, that they don't wait any longer to get into the class? There are different wait periods here. But I take Your Honor's point that it may be a net positive or it may be a net negative. The point is that the parties all agree that this decision has the potential to have a profound impact on candidate attrition, and that is essential. But you haven't told me how. And I ask this because the point is not just to make them make the city go through requirements that don't affect discrimination. It's to make sure that they are not engaging in practices that can affect discrimination. So when you say it could have an effect, I'm still trying to understand how. Well, Your Honor, I don't think I've persuaded you about the changes in the time period. And, again, it's not necessarily that it would have been net negative or net positive. We didn't have the data. And importantly here, all of the measures that the city put in place to deal with candidate attrition after the CPAP, which is the number one time in the process that we lose the most people, were based on a rate of bringing people in from exam 2000. So did the city have the right number of people in place to help keep people in the process? It was planning for a completely different rate of people coming through that process. And what the monitorship, the purpose of the monitorship, is to ensure that there aren't effects of attrition that perpetuate the effects of past discrimination. And the change in the hiring process of that magnitude with that potential to frustrate one of the main goals of the MRO was clearly within the MRO's purview. Wait a minute. I want to ask, though, the single remedy that the United States sought, which was a listing of the steps requiring preapproval, doesn't that kind of suggest that the MRO was ambiguous? I mean, because that remedy is something that I think we could find in paragraph 32. No, Your Honor. The list of steps as a remedy is not a statement or a referendum on whether or not the MRO was clear and unambiguous to the city in terms of its obligations. It's a question of whether or not the city adequately communicated those obligations to the personnel who actually carry out the hiring process. And it also permits the monitor and the other parties to be able to be a better check on that process because we do not have the firsthand knowledge necessary to know what is happening behind closed doors as the city operates its hiring process. Am I correct that the city has taken the position that they'll abide by this requirement that they only call one class at a time, they just don't want a violation finding, so to speak, on their record? The only thing contested here is the district court's finding of a violation. The city concedes that the court had the authority to order the relief here and they don't contest that relief. And it was very modest relief to remedy a violation of the order to ensure that if there were any negative effects of this attrition, there were adequate protections in place to mitigate any damage. And for that reason, the district court did not abuse its discretion in finding a violation and ordering this modest relief that the city does not contest. Okay. As you understand the MRO, does the city have to get the monitor's permission for one class? Because the monitorship has been ongoing and there were certain practices. I think that's a yes or no, isn't it? I think it depends. I don't think they had to get permission for one class. They don't have to. They did not have to because it was a part of the Exam 2000 process. And so the consequences of that would have been addressed during the Exam 2000 process. So they did something twice that they could do once? It's not that they did something twice that they could do once. It's that they did the thing twice at the same time they could have done it once. So at the same time they did two things that they could do once? Yes, Your Honor. And you think that's a violation? It's a violation because the decision itself had an impact on thousands of candidates. It had this potential for impact on attrition. Calling one class has an impact on lots of people, doesn't it? Yes, it certainly does, Your Honor. And, again, that would have been approved through the Exam 2000 process. It wouldn't necessarily need to be revisited during the Exam 7000 process unless there were other things that became apparent during the monitorship. But I just want to really quickly just address one thing. It's an unusual violation to say you get to do it once, but to do it twice it becomes a violation. Usually the question is, is the doing of it a violation at all? And we're talking about the change being the violation as opposed to the doing of a thing. I see what you're saying, Your Honor. I think just in response to that, the MRO made this obligation clear to the city because it has three key pieces of information that set up what the city has to do here. And the first is that that order expresses the need for approval in very broad terms. It has a non-exhaustive list of 16 examples that made clear that the MRO covers not only the assessment itself, but the decision points along the way from start to finish. And that is a decision point to change how you bring people into the CPAT. And because it had the potential to affect attrition and that that is the main goals of the MRO from the four corners of the MRO, whatever else it covers, it certainly reaches decisions on the hiring process that have a significant effect on attrition. But if calling one class without approval is not a violation, then calling one class is not a step, is it? It's not because it's not a step. Within the meaning of the MRO. The decision to call a class in is a step, and they did get approval to call candidates in. So the approval to get... Oh, I'm sorry. I thought you said they don't need approval to call one class. I simply meant that they didn't need approval for the decision to call one. If the rate had stayed the same, that wouldn't have been a step in the process. That wouldn't have been a change. The actual decision to call certain score bands, that was a step in the process that required approval. And the reason that the change requires approval here, and everyone, all parties agree that a change in the process was something that would be required approval under the MRO, is because it is one of those major decision points that the city undertook in its hiring process for entry-level firefighters. I think they agree a change requires, but they don't agree that two classes represents a change, right? On appeal, they've conceded that we've established that there was a change here. They don't contest that fact. Well, if you mean a factual change, I mean, sure, two is different than one. I think we can all agree on that. That's a matter of arithmetic. Yes, Your Honor. But whether two classes is a change in procedure that requires approval, that's the question, isn't it? Yes, yes. And they don't agree on that? No, they don't agree that that was within the context. So when you say they all agree. We agree as a factual matter, yes, Your Honor, but not as regards to what the MROs were. And one last thing, if Presidio will permit. Do you share Ms. After's view that this is not appealable? We agree with the plaintiffs' interveners that the simplest path forward here would be to find that this court has no jurisdiction. And that lies in the— It would be the simplest. But is the United States taking the position that a finding of a post-judgment violation of a decree is not appealable? Yes, Your Honor, and the reason we agree is that this court, even in the more flexible post-judgment context, has considered whether or not an order would have any immediate effects and whether or not it would be effectively reviewable later. Because the city doesn't contest the effects here or the court's authority to order it, there really are no immediate effects of concern. That position may come back to haunt you if you're ever found to have violated the decree, and it's not inconceivable that with 94 district courts that's going to happen one day. That's why I'm surprised you share that position. I can understand you arguing the merits instead, but you're telling me you agree with it. Well, I think regardless of whether or not the United States agrees, the city's burden to establish whether or not there's jurisdiction here, and they haven't shown that in a case like this where there's an ongoing remedial phase that will end with a subsequent order. There is an anticipated end to this that will resolve in an appealable proceeding where this could be reviewed, that in that situation that this court has taken an appeal. But regardless, the United States and plaintiffs' intervenors prevail on the merits here in showing that the district court did not abuse its discretion in holding the city in violation of the MRO. May I ask a few questions following up on your responses to Judge Newman? The city approved the calling of the two bans, right? The city got approval for calling the specific bans, yes, Your Honor. Would the one ban, the earlier group, have been enough for one class? So what the city did in 2018 when it did the first round of hiring is that it called several bans that amounted to about 2,400 candidates. And that was enough to fill two classes based on their rate of selecting candidates. But they have to call everybody in a ban. I understand that. That's why I'm asking. Would one ban, the first ban, the higher scorers, have been enough to fill one class? No, Your Honor. That's what I understood. No. So they had to go to the second ban. Well, I'm so sorry, Your Honor. I didn't mean to interrupt. Did they have to go to the second ban even to fill one class? That's what we don't know from just the raw numbers. So the raw numbers were presented to the monitor and to the parties. And we don't know how many in that number were selected because the city decided to call for two classes. Well, the second ban is huge relative to the first ban, if I remember correctly. The second round of calls was for 3,000. Is that what you're referring to or are you referring to the actual? When they decided they were going to call two bans of test scores, the first ban wouldn't have given them enough to have a first class, if I understood correctly. Yes, Your Honor. So the first ban from the written exam is their score, and the highest score with bonus points is over 100, and there's a smaller. I'm not asking you to explain it to me. I'm just asking whether I've got the numbers right, that they had to call more than one ban even if they only wanted one class, or is that wrong? Are you asking whether or not they would have needed to call more than 2,400 people, or you're asking whether or not they would have needed to call more? The individual bans have different amounts in them, and I'm not aware of how many were in each ban. But we don't know how many the city would have needed to call without knowing what they're measuring it against, without the underlying data to say, are you calling for two classes or for one? Well, when you all approved the two bans, what were you looking at? What were you concerned with when you said, okay, call the two bans, because you did say, okay. Well, we didn't raise any concerns, again, because we weren't aware of any change in the rate. I understand that. I'm just trying to make sure I understand what happened here, which was two bans were called and you okayed that. We didn't raise any objection to that, Your Honor, and they proceed with that hiring. That's correct. Okay. Now, at what point did the city decide that out of those two bans that you didn't object to them calling, they were going to fill two classes? So, it would have been before they called that first round of 2,400. To have called that many at that time, based on the comparison with the Exam 2000 data and based on the city's hiring ratios, they would have made that decision beforehand. They wouldn't have gotten all the… Just based on the numbers. Just based on the 2,400, they would have only needed for one class around 900. Right, but they couldn't fill that with the first ban. Exactly, but they could have pulled maybe perhaps less bans, but we don't know which one. Again, not having the band information… I thought you had it called everybody in the band. You couldn't say, well, we only need 900, so we'll call the first 200 in the band. You have to call the whole band. Did I misunderstand how it works? No, that's correct. Once it was decided it was going to be two bans, it was going to be this large number, right? It's more than two bans. That 2,400 is an array of bans from, I believe, score 102 to 104, I believe, if that's correct on the number of points. So there's more than one ban that is that 2,400. One ban might have 50 people, another might have 300. So without having the comparison to Exam 2000 and without knowing how many people in that 2,400 were called because of the civil service rule requiring them to call everyone or because they were trying to fill two classes, we don't have that information on the face of the raw numbers. All right, thank you. Thank you. Thank you, Your Honor. Mr. Davis, you've got two minutes on the phone. Jeff, how many bans did you call? So for that round, it was bans 124 through 102. The very highest bans have relatively few candidates in them, so it's actually a significant number of bans, but those upper bans don't have very many candidates in them. Okay, and at what point would you have reached 900? I believe, I don't have it right in front of me. I think it would have been before it got to 102, though. So I believe they would have been able to fill a class without going all the way to 102. Just quickly on jurisdiction, I think I would just make the point that this court has held specifically post-judgment orders issuing cases involving a protracted remedial phase have been readily deemed appealable. That's in Silverman, and I don't believe that either of the cases that our friends on the other side mentioned in their oral argument were cited in their brief. And I would like to pick up also just quickly on a point that Your Honor made. The part of the district court's order gives exactly the purpose of making the document that they're requesting to outline all the steps. It says, the purpose of the document is to clarify the steps in the hiring process so that it's clear under what circumstances the city is required to seek the monitor's preapproval. And if it's required to create a new document to show all the steps to clarify under what circumstances the monitor's preapproval is necessary, it means that it couldn't possibly be that the MRO itself prevented us from calling enough candidates to fill two classes at once. And then I'd like to just quickly turn, because we didn't have a chance to address it, to Step 3 of King. There's no dispute that the city was in good faith making an attempt to comply with the MRO. Its compliance should be judged in the context of the MRO as a whole. There's never been any allegation of any violation in the entire tenure history except for this one of the MRO. And so the third prong of King, reasonable attempt to comply with the order, is to meet anything. Where's the case law that says a general compliance with a longstanding order is enough or should be weighted when deciding a specific violation? I mean, it seems to me that that would defeat the purpose of an injunction like this, because it would be saying if you're generally good, we're going to ignore the specific violations. Sure. So to answer your first point, I think everyone agrees that there's no specific case on this issue, one way or the other, about what King's Step 3 means in the context of a long-running MRO. I think the reason why it wouldn't raise the concern that Your Honor is mentioning is because in these sort of long-running things, there are a lot of informal mechanisms where the parties confer. You know, the parties conferred about this issue for over a year. The court can modify its order. It's already a modified order to issue prospective relief to clarify things. So I don't think it raises that issue because there is this sort of— if general compliance ignores a specific violation. Yeah. I think under King's Step 3, the courts talk about the fact that there's perfect compliance is not required, and the question is whether or not you've made a reasonably diligent attempt to comply with the order. And I think here, the city—it's undisputed that the city, in good faith, made an attempt to comply. Well, except for the fact that the district court found a violation. Right. So I think there has to be— You knew about King, right? I mean, it was cited. There has to be some difference between Step 2 and Step 3. Step 2 is the finding of the violation, and Step 3 is reasonable compliance. So if it's the fact that you lose on the finding of a violation, then there's no point to having Step 3 because Step 2 is the finding of the violation. Well, I mean, there's overlap, and it informs the sanction decision more. Isn't that a way to look at it? That Step 3 is very much a matter of whether this is a violation that warrants a sanction. I don't—I think, yes. Whether it's a violation that warrants a sanction at all, I think that's right because if you say, well, this was a violation, but we don't think any sanction is warranted because you have made reasonably diligent attempts to comply, I think that's exactly what should happen here. There shouldn't be a finding that we violated the order. And with that, unless there are any further questions, I urge this Court to reverse it. Is there a difference between finding a violation of a court order and making a finding of civil contempt? I think under this Court's decision in EEOC v. New York Times, it says that this Court has said that you consider them under the same standard. So I don't think the analysis changes. For review purposes. Correct. But as far as the consequences of it, does it matter? The consequences, I think, may matter in some cases. In here, there is a procedure within the MRO for imposing sanctions. It's clear that this is a sanction. It was sought as a sanction under the MRO. So I think whether you denominate it as contempt or a sanction found as a violation of the MRO doesn't really change anything. You could get sanctions for a violation without a finding of civil contempt. Could you not? Yes. Okay. Thank you, Your Honors. I urge you to reverse. Thank you. We will take the case under advisement.